**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

THE LOCAL MOMS NETWORK, LLC.,

             Plaintiff,

v.

RACHAEL LAMONT,

             Defendant.

**Case No.:**

**COMPLAINT**

February 9, 2024

---

Plaintiff, The Local Moms Network, LLC ("TLMN" or "Plaintiff") by and through its undersigned counsel, and for its Complaint against Defendant, Rachael Lamont ("Lamont" or "Defendant") alleges as follows:

**NATURE OF THE ACTION**

1.     Plaintiff, The Local Mom's Network, is the definition of a party with a real and immediate need for injunctive relief. On December 24, 2023, Lamont, an independent contractor of TLMN's, changed the password and locked TLMN out of the Instagram account that it has owned, and has been running since October 2019, one year before Lamont even began managing the account on TLMN's behalf. Even after TLMN made several direct requests, and sent two written demands through its lawyers, Lamont continues to claim ownership of the account, and with it, the approximately 40,000 followers who think they are still following a member of The Local Moms Network family. Lamont's theft of TLMN's Instagram account and unauthorized use of TLMN's trademarked property must be stopped.

2.      If not stopped, Lamont's unlawful actions threaten to destroy TLMN's entire business, as nothing would then stop every other local mom from just walking away with TLMN's intellectual property and using it to establish their own individual site.

3.      As such, and in order to protect its valuable intellectual property and its clear property rights to its own Instagram account, and to stop Lamont from competing with TLMN in direct violation of the parties' contract, TLMN brings this action under both the Lanham Act and common law for cybersquatting, trademark dilution, breach of contract, conversion and trespass to chattels, seeking both monetary damages, statutory treble damages and injunctive relief.

## THE PARTIES

4.      Plaintiff, TLMN is a Connecticut limited liability company with a principal place of business in Greenwich, Connecticut. TLMN's sole member is a Connecticut domiciliary.

5.      On information and belief, Defendant Rachael Lamont is a domiciliary of Frisco, Texas.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court also has jurisdiction over this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331; and 28 U.S.C. § 1338(a) and (b).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District and Defendant is subject to personal jurisdiction in this District under the terms of the parties' contract.

## FACTS

9.      TLMN is web-based business—a resource for "local moms" across the country to access trusted local services and businesses, which, through advertisements, are the prime revenue source for TLMN.  TLMN grants an independent contractor like Lamont the ability to utilize all of TLMN's intellectual property—its trademarks, tradenames, social media accounts and content—to "grow" a local network.

10.     TLMN was founded by Layla Lisiewski ("Lisiewski") in 2016 when, as a mom, she noticed the difficulty of navigating parenthood and trying to find resources that would be helpful to her and her family.  She knew she was not alone in this position and decided to create a network that would help other moms and parents connect to local, valuable, and trustworthy resources.

11.     Thus, TLMN was born, where its mission is to give moms the gift of time.

12.     TLMN does so by sifting through all the parenting information available to moms and presenting them with, at a hyper-local level, the resources, services, and products they need, the same as a true "mom-friend" would do.

13.     The TLMN team has developed a digital platform that elevates the way in which a parent "parents" and enables the delivery of rich content (monetized by advertisements) that is enjoyable to read across three impactful channels: social media, emails, and website. TLMN partners with local and national brands that it carefully selects and stands behind.  By leveraging TLMN's digital media market and highly-targeted mom audience, TLMN connects brands to the right consumer (moms), and the moms to their communities.

14.     The business of TLMN operates and has expanded through a network of independent contractors: TLMN's Secondary Territorial Sales Representatives ("SSR") who are

also known as Site Curators and Local Website Managers. TLMN currently contracts with 146 local parents that curate content and events for 107 communities across 30 states.

15.     TLMN provides all the tools for the local moms to build out and create their own businesses, with zero start-up costs.  In return, the SSRs provide certain services to TLMN that include maintaining an affiliate TLMN website, social media accounts, and email outreach where the SSRs provide hyper-localized content to their network of followers in their specific community.

16.     To prepare for this position, the SSRs participate in a six-week training course with the TLMN Web Development Team where the SSRs learn how to utilize WordPress, social media, email marketing, and advertising sales to their fullest potential, so that each SSR mom can be successful.

17.     In addition to this intensive training course, TLMN has a full team dedicated to providing ongoing training and assistance to the SSRs as they develop their networks.  TLMN also maintains a shared drive containing TLMN training materials and sales support information, such as strategy webinars, guides, playbooks, and a library of pre-developed content that is available to share on their local sites.  The SSRs have access to this shared drive at all times, and are encouraged to reach out to the TLMN support team should they ever have any questions.  With all this support, each SSR has the opportunity to turn their position as an independent contractor for TLMN into a profitable one.

18.     TLMN's business model is an advertising revenue model on a local, state, and national level.  At the local site level, the SSRs "sell" advertising in their local "territories" and TLMN receives a percentage of all sales.  The SSR earns up to eighty percent of the net revenue of each transaction that is received by TLMN in commissions from sales of advertising services in

the SSR's territory to any advertising account that is approved by TLMN and that was originated and retained by the SSR.

19.     On the national level, TLMN acts as a launch pad for both new and established brands that are looking to reach TLMN's captive audience of moms with spending power.  For national deals, TLMN requires SSRs to make certain postings to advertise the partnering brand on their local websites and across social media platforms. It is this extensive, well-established, highly-regarded and trusted advertising network that these national partners are investing in when they purchase advertising space from TLMN.

20.     Local and national brands continue to choose TLMN as an advertising resource because TLMN has quickly become recognized as the go-to online resource for parents.  TLMN has put significant time, energy, and financial resources into making TLMN its own brand.  Over the past 6 years, TLMN has built a team of 12 staffers to offer full-time support to other SSRs. TLMN spent nearly one million dollars in consultants, graphic design, and web development and services, including the $2,500 cost for each new SSR's onboarding expenses and website development.

21.     The TLMN brand includes the trademarks "Giving Moms the Gift of Time" with Registration No. 6093786 (July 7, 2020) (the "slogan") and "The Local Moms Network" with Registration No. 6044260 (July 7, 2020) (the "tradename"), as well as the mark "Giving Moms the Gift of Time The Local Moms Network thelocalmomsnetwork.com" with Registration No. 6093787 (April 28, 2020) as depicted below (the "logo"):



22.     A slightly modified, derivative version of the above pictured logo, modified by TLMN, is included on all local sites and social media accounts run by each of the SSRs.  The name of the territory is inserted where the logo currently says "Giving Moms the Gift of Time", and then that trademarked slogan replaces the website at the bottom of the mark.  For example, in the North Dallas area, the mark is:



23.     Each local website and social media account is also similarly branded as [territory]moms.com and the [territory]momsnetwork or the [territory]moms.  For example, in the North Dallas area, the website is northdallasmoms.com, the Facebook account is North Dallas Moms, and the Instagram account is @northdallasmomsnetwork.  Each of these platforms includes the above-pictured modified logo at the very top of each page.  TLMN thus ensures uniform brand identity across all platforms, websites, and accounts so that consumers and followers have no confusion as to whether an account is affiliated with and backed by TLMN.

24.     The TLMN registered trademarks and tradename were first used in commerce by TLMN as early as April 2017. TLMN then began utilizing the modified derivative logos and

tradenames later that same year, as local territories began opening up. These modified derivatives are currently being utilized in commerce in 30 states and 107 local communities, and this uniformity is a major part of the strength of TLMN's national online brand recognition.

**Rachael Lamont**

25.     On September 22, 2020, Lamont executed the Secondary Territorial Sales Representation Agreement (the "SSR Agreement"), whereby she became an independent contractor of TLMN and agreed to provide SSR services in the Frisco, Texas territory.[1] See SSR Agreement, attached hereto as Exhibit 1.

26.     By executing the SSR Agreement, Lamont agreed to render to TLMN:

> such services as are typically associated with originating and retaining advertising accounts and curating, creating and updating appropriate content for a Local Moms Network affiliate website, social media, and online advertising platforms for the Territory, and other responsibilities in the Territory as may be reasonably requested by the President, including but not limited to those set forth in The Local Moms Network Handbook, the current version of which is attached at Appendix A, as it may be updated or amended from time to time (collectively, the "Services").

Ex. 1 at section 2.(a).

27.     The above listed Services include:[2]

> developing, launching, maintain and promoting, for the Territory, a Local Moms Network affiliate website (the "Website") and social media accounts (the "Social Media Accounts"), based upon and utilizing samples, templates and other platform content, which may include layouts, headings, graphics, images, text, electronic files, links, domain names, URLs, hashtags, social media names and handles, forms, data, trademarks, slogans, and other materials, to which access is provided to SSR by Company hereunder (the "Company Content").

---

[1] The SSR Agreement is erroneously dated September 22, 2019, but it was signed on September 22, 2020.

[2] Terms not defined herein have the same meaning as those terms are defined in the SSR Agreement.

Ex. 1 at section 2.(b).

28.     The SSR Agreement was very clear as to Lamont's limited rights to use TLMN's intellectual property:

> a limited, non-exclusive, royalty-free, non-transferable, and non-sublicensable license during the Term to use, solely in connection with the Services: (i) the Company Content, along with such of Company's Trademarks as may be contained in the Company Content, including those trademarks set forth on Schedule 1 hereto; (ii) the Website and Social Media Accounts referenced above; and (iii) any Trademarks, patents, copyrights, trade secrets, and other intellectual property of any kind ("Intellectual Property") created by the SSR as part of the Services.  The SSR shall make no other use of Company Content.  All use of Company Content, including Trademarks, shall follow such trademark, usage and other guidelines as may be provided by the Company from time to time.

Ex. 1 at section 2.(c).

29.     The SSR Agreement is crystal clear: "the Company owns all right, title, and interest in, to and under all Company Content and that SSR shall not acquire any proprietary rights therein.  Any use by the SSR of any of the Company's Trademarks and all goodwill associated therewith shall inure to the benefit of the Company."  Ex. 1 at section 2.(d).

30.     As a web-based company, the value of TLMN is in its image, branding, trademarks, content, advertising partners, and consumers—which include all of its social media followers.  TLMN fully understands the value of its Intellectual Property, and made sure to emphasize to Lamont that (i) she is an independent contractor; (ii) the work she does for TLMN constitutes a work made for hire; and (iii) TLMN maintains all ownership of the work she produces.  The SSR Agreement specifies:

**10. <u>Ownership of Intellectual Property</u>**

> (a)     The Company is and shall be the sole and exclusive owner of all right, title, and interest throughout the world in and to all the results and proceeds of the Services performed under this

Agreement, including, but not limited to, (i) any works of authorship within the meaning of U.S. and international copyright law ("Works"), inventions or processes, as such terms are defined in 35 U.S.C. § 100 ("Inventions"), or any trademarks, trade secrets or the like created, developed, made or conceived by the SSR alone or with others during the Term related in any way to the business of the Company or the Services described herein, and (ii) the deliverables provided hereunder (all such results and proceeds, collectively, the "Deliverables"), including all patents, copyrights, Trademarks, trade secrets, and other intellectual property rights (collectively "Intellectual Property Rights") therein.  Without limiting the foregoing, all websites, domain names, social media accounts, user names, content and related goodwill (including but not limited to mailing, user, advertiser, fan or follower lists), associated therewith that are acquired, created, developed or used by or on behalf of SSR relating to the Services shall constitute Deliverables.  Any registration thereof in the name of SSR or its affiliate shall be for the benefit of Company.  The SSR agrees that the Deliverables are hereby deemed a "work made for hire" as defined in 17 U.S.C. § 101 for the Company.  If, for any reason, any of the Deliverables do not constitute a "work made for hire," the SSR hereby irrevocably assigns to the Company, in each case without additional consideration, all right, title, and interest throughout the work in and to the Deliverable, including all Intellectual Property Rights therein.

Ex. 1 at section 10.(a).

31.     In order for TLMN to monitor and maintain control over the affiliate Websites and Social Media Accounts, TLMN requires that the Social Media Accounts be connected to Sprout Social, Inc. ("Sprout"), which is a social media management platform.  TLMN has utilized Sprout since November of 2021.[3]

32.     All SSRs, including Lamont, were made aware of this arrangement by email on December 19, 2021, when they were each required to add the accounts they manage for TLMN directly to Sprout.  On January 19, 2022, TLMN hosted a webinar for SSRs discussing Sprout and the benefits of its services.

---

[3] Prior to Sprout, Hootsuite Inc. provided similar services to TLMN.

**The North Dallas Area**

33.     With the SSR Agreement executed, Lamont began working as an SSR as part of the Frisco Area Moms Territory, along with another SSR, Megan Hughey, in September of 2020. Lamont partook in the training seminar and was afforded all the TLMN resources that TLMN shares with each of its SSRs.

34.     On information and belief, through this training, the available resources, and her contractual obligations, Lamont learned that TLMN held trademarks on its name, logo and slogan.

35.     The Frisco Area Moms Territory was created in October of 2019 by Ms. Hughey and Mykee Jo Stiller, a former SSR. The predecessor Social Media Accounts, including the Instagram account for the North Dallas Area Territory (the "Instagram Account") were also created at that time. A screenshot of the Instagram Account's opening date is attached hereto as Ex. 2.

36.     In January of 2023, after a little over two years of Lamont and Ms. Hughey working together, both SSRs approached Lisiewski and Stefanie Horn, TLMN's Community Manager, requesting a larger territory in which to sell more advertisements. That same month, the Frisco Area Moms Territory changed to the North Dallas Area Territory.

37.     With this re-naming, came a change in the Website domain name and the handles of the Social Media Accounts. On January 18, 2023, TLMN purchased the domain NorthDallasMoms.com. With the assistance of Ms. Hughey, TLMN also changed the Instagram Account handle to @northdallasmomsnetwork and the Facebook page became the North Dallas Moms. From that point on, Ms. Hughey ran the North Dallas Website and Social Media Accounts.

38.     On April 2, 2023, Ms. Hughey resigned as an SSR for personal reasons, and Lamont took over the North Dallas Area Territory. She was given the Website credentials as well as the

login information for the Instagram and Facebook accounts.  At the time Lamont was provided access to the Instagram Account, the account already had approximately 10,000 followers.

**Lamont's Multiple Breaches of the SSR Agreement**

39.     As shown below, shortly after becoming an SSR, Lamont began to ignore her obligations and repeated attempts to contact her went unanswered. On information and belief, Lamont had decided that she was going to run the Instagram Account her own way, without any direction from TLMN.

40.     Commencing in May of 2023, Lamont stopped sharing the TLMN monthly newsletter with the North Dallas Area email list, causing TLMN's monthly updates and campaigns to fail to reach all the moms in its 107-locale network.

41.     In April of 2023, TLMN entered into a national partnership agreement with BabyQuip Inc., whereby TLMN agreed to run an email, website, and social media campaign for BabyQuip Inc. across 20 select towns, including the North Dallas Area, in exchange for $15,000. Lamont was informed of the campaign and was told she needed to post certain testimonials regarding BabyQuip Inc. on the North Dalla Area sites.

42.     However, Lamont made no such posts.

43.     On July 25, 2023, Lisiewski sent an email reminding Lamont to make a post. Lamont never made the required post, resulting in TLMN's failure to complete the campaign as contracted, the loss of BabyQuip Inc.'s recurring partnership, and along with it, any fees. It also caused the SSRs who brought in BabyQuip, Inc.'s business to receive reduced commissions and lose a partnership they worked hard to secure.

44.     In June of 2023, TLMN entered into a partnership agreement with Highgate Hotels, L.P.  On August 3, 2023, Sophie Wilson, TLMN's Director of Development, sent an email to

Lamont, which included the required post, and directed her to upload the post to her site. Ms. Wilson made clear that failure to do so would result in TLMN uploading the post for her (this could be accomplished through Sprout). Ms. Wilson further stated that TLMN needed to provide the client with follower engagement metrics.[4]

45.     Ms. Lamont did not respond to Ms. Wilson, nor did she comply.

46.     On August 9, 2023, Ms. Wilson sent another email reminder directly to Lamont, copying Lisiewski, again asking Lamont to post the Highgate Hawaii reel, even offering to re-send the information needed to accomplish the task. But again, Lamont did not respond, and as with the final BabyQuip post, the post was never uploaded, and the campaign was never completed.  On information and belief, the incomplete campaign contributed to Highgate no longer wanting to work with TLMN.

47.     In September of 2023, TLMN entered into a national campaign with YSE Beauty by Molly Sims, an account Lisiewski secured herself, which required all SSRs to send an email to their email list dedicated to the brand and its products.

48.     Lamont never sent this email.

49.     Due to this failure, Lisiewski had to put in extra time to save face for TLMN and not lose the partnership completely.

50.     In November of 2023, TLMN entered into an all-state social media marketing and article campaign with Madison Reed, Inc. across 12 select towns, including the North Dallas Area.

---

[4] TLMN provides reports to its clients with the follower engagement metrics to show the number of views a post has, the number of interactions with a post, and the number of new visitors that have interacted with the account and post.  This helps TLMN's partners see the value in advertising on TLMN sites.

51.     Again, Lamont never completed the necessary posts and again, the campaign was left incomplete, resulting in a loss of the recurring partnership and the $9,500 continuing income associated with it.

52.     In October of 2023, TLMN entered into a national partnership agreement with 21Seeds, a Diageo PLC company, for an email, website, and social media campaign to run across 50 TLMN area sites, including the North Dallas Area, for a fee of $47,500.

53.     On December 19, 2023, Ms. Wilson emailed Lamont and other SSRs, copying me, to remind them that they were required to upload a post for this campaign by December 20, 2023, at 6:00 pm (the "21Seeds Post").  This was the first post in a series, as part of a much larger campaign. Ms. Wilson very clearly informed the SSRs that if they did not post, or inform TLMN when they would be posting, then TLMN "will post for you starting at 6pm on Wednesday, December 20th."  A screenshot of this email is attached hereto as Ex. 3.[5]

54.     After not hearing from Lamont, shortly before midnight on December 21st, TLMN accessed the North Dallas Area Instagram Account through Sprout and made the necessary post.

55.     The next day at 9:04 am, Lamont emailed Ms. Horn stating she was upset that TLMN had posted the 21Seeds Post to her account because it promoted tequila. Lamont's position—that she would not promote alcohol-based content and that the 21Seeds Post was offensive to her—is without merit and is just another example of her disregard of her obligation to promote national partners (in addition to all Texas and local partners).

56.     In fact, there are currently still older posts on the Instagram Account that refer to and promote the drinking of alcohol. Lamont has not removed any of these posts even though she

_____

[5] All screenshots attached hereto were taken from webpages that were last visited on February 9, 2024.

claims to be so concerned for *her* brand. A screenshot of the Instagram Account's post history is attached hereto as Ex. 4.

57.     Lamont then also demanded to know how TLMN had accessed the North Dallas Area Instagram Account—the account *that is owned by TLMN*—because it felt "like an invasion of privacy." By 10:05 am on December 21st, the 21SeedsPost had been deleted by Lamont.

58.     In November of 2023, TLMN entered into a national campaign with Lifelines, LLC across 20 select locations, including North Dallas, where TLMN was to receive $10,000.  Lamont was required to feature Lifelines, LLC on the North Dallas Website and Social Media Accounts, and she was supposed to create an Instagram reel about the products.

59.     On January 8, 2024, Ms. Wilson emailed Lamont asking if she would post the social media component of the campaign so that TLMN could provide engagement metrics to the client. Lamont made one post on January 10, 2024, shared the metrics with Ms. Wilson, and then deleted the post.

60.     Deleting required posts, which are paid for by TLMN's partners, is not permitted and doing so has a disparaging effect on TLMN's brand and reputation. TLMN's partners continue to (i) check online to confirm that their posts in fact exist; and (ii) request engagement metrics whereby these partners learn and understand the value of working with TLMN. By taking unauthorized and unilateral action, Lamont undermined everything TLMN has worked so hard to create.

61.     In December of 2023, TLMN entered into a year-long partnership agreement with Kidventure, Inc., valued at $10,000, whereby several Texas TLMN affiliates, including the North Dallas Area, are required to make continuing emails, social media posts, and advertisements to promote Kidventure, Inc.'s Summer Day Camp Guide (the "All Texas Camp Guide").

62.     Lamont did not make the January posting and, based upon the actions later described herein, no posting will be made in the North Dallas Area which will result in a loss of the campaign partnership, the fees associated with the campaign, and the goodwill of the SSRs that secured this campaign.

**Lamont Steals the North Dallas Area Instagram Account**

63.     Throughout the last half of 2023, communication with Lamont became increasingly terse.  On June 22, 2023, Lamont requested a copy of her contract.  TLMN sent an updated contract that now said North Dallas Area (instead of Frisco Area), but she did not sign it.  TLMN then sent Lamont a copy of the original SSR Agreement for "her records."

64.     On November 22, 2023, Lamont requested a copy of the handbook which, despite having previously provided this information to her, TLMN again sent her a copy of.

65.     Then, on December 24, 2023, Lamont disconnected the North Dallas Area Instagram Account from Sprout and changed the account login information leaving TLMN with no access to the North Dallas Area account—TLMN's Intellectual Property.

66.     Lamont also stopped posting to the North Dallas Area Website and Facebook page, leaving both sites lingering without providing any required content to TLMN's North Dallas Area moms.

67.     However, Lamont continued to upload her own content to the North Dallas Area Instagram Account, using it as if it were her own personal account. In a blatant rip off of everything TLMN has created, Lamont changed the photo associated with the account from the North Dallas Area TLMN logo to a photo of herself—everything else about the Instagram account is exactly the same as it was, including links to the North Dallas Area Website. A screenshot of the Instagram account is attached hereto as Ex. 5.

68.    Through the linktr.ee/northdallasmoms link found in the Instagram Account bio next to Lamont's photo and below the account name, North Dallas Moms Network, any visitor can click through to a list of links and access each of the websites that are linked therein. (A screenshot of the linktr.ee webpage is attached hereto as Ex. 6.

69.    At the top of the webpage reached by clicking on the linktr.ee/northdallasmoms link in the bio is the North Dallas Moms Network logo.

70.    One of the links below this logo is a link to Lamont's Amazon storefront, where Lamont is selling goods under the name (and TLMN's derivative tradename) "North Dallas Moms // Rachael Lamont", and it indicates that Lamont earns commissions from all sales made through her storefront. A screenshot of Lamont's Amazon storefront is attached hereto as Ex. 7.

71.    The Instagram icon on the Amazon storefront webpage links back to the North Dallas Moms Network Instagram Account.

72.    Several other links on the linktr.ee page link to the website, northdallasmoms.com, which contains TLMN's logo at the bottom of the page and the North Dallas Moms Network logo at the top. The website also states, "A Proud Member of the Local Moms Network. Dedicated to Giving Moms the Gift of Time", TLMN's trademarked slogan. It also contains links to the Local Moms Network website. A screenshot of the North Dallas Moms Network Website is attached hereto as Ex. 8.

73.    Through these links reachable from the Instagram Account, Lamont is using TLMN's registered trademarks, tradenames, and derivatives thereof to intentionally confuse and divert followers and consumers from TLMN and to profit from TLMN's name, image and business reputation.

74. After Lamont's take-over of the Instagram Account on December 24, 2023, several TLMN team members reached out to her, telling her to reconnect the Instagram Account to Sprout, but she refused.

75. Thereafter, on December 30, 2023, Lisiewski sent Lamont several screenshots of certain terms from the SSR Agreement to clarify that TLMN owns all Intellectual Property and Deliverables. Lamont still refused to return the Instagram Account to TLMN.

76. On January 17, 2024, Lisiewski sent a text message to Lamont informing her that if she did not reconnect the Instagram Account by the following day, TLMN would consider it stolen, and engage counsel.

77. However, Lamont made it clear that she intended to continue using the North Dallas Area Instagram Account as if it was her own, personal account.

78. Lamont was then informed again that the North Dallas Area Social Media Accounts, email list and Website were TLMN's property, and that the login information needed to be returned to TLMN by 10:00 am EST on January 18, 2024.

79. Lamont did not comply.

**Termination of the SSR Agreement**

80. On January 26, 2024, a termination letter was sent to Lamont (the "TLMN Termination Notice"), by which TLMN terminated Lamont for cause for breaches of Sections 2.(b) and (e) of the SSR Agreement for: her failure to send the TLMN monthly newsletter to the North Dallas Area Moms; her failure to post to the Website; for disconnecting the Social Media Accounts from Sprout; and refusing to participate in both state and national partnerships.

81. TLMN demanded that Lamont return all Deliverables and Intellectual Property to TLMN, including the login information for the Instagram Account, and to cease and desist from

competing with TLMN in the North Dallas Territory. Lamont was given until February 2, 2024, to respond.

82.     After this termination notice was sent, on January 26, 2024, TLMN received a termination letter from *Lamont's* counsel, dated January 22, 2024, purporting to terminate the SSR Agreement, and citing a variety of unfounded issues that Lamont had with TLMN (the "Lamont Termination Notice").

83.     On February 1, 2024, TLMN sent a response to the Lamont Termination Notice, explaining the fallacies contained therein, and again demanding a return of all Deliverables and Intellectual Property of TLMN, including once again, the login information for the Instagram Account, and for Lamont to cease and desist competing with TLMN in the North Dallas Territory (the "2/1/24 Letter").

84.     The following day, on February 2, 2024, Lamont's counsel sent a response to the TLMN Termination Notice, seemingly ignoring the 2/1/24 Letter (the "Second Lamont Letter"). In it, Lamont claims that she is not in breach of the SSR Agreement, is not responsible for posting to the Website, was not aware of Sprout, she disconnected the Instagram Account due to TLMN's "unauthorized access," and that she made all required posts.

85.     Lamont then feigned a compromise by agreeing to dissociate with TLMN, and return the Website and Facebook login information (which TLMN already had), but she demanded that she retain ownership of the Instagram Account, stating that she is willing to change the account name.

86.     The Instagram Account is TLMN's property and falls within the definition of Company Content and Deliverables, as those terms are defined in the SSR Agreement.  The SSR Agreement contains a "Covenant to Return Confidential Information and Deliver Reports"

(Section 11), whereby Lamont agreed that the Deliverables, "which the SSR created or obtained" during the Term "are property of the Company, and the SSR shall promptly return all such materials in its possession to the Company promptly upon the end of the Term (or sooner if requested by the President)."

87.    Lamont is contractually obligated to return the Instagram Account and login credentials—a Deliverable and Work Made for Hire—to TLMN and Lamont's refusal to do so puts her in further breach of the SSR Agreement.

88.    Lamont was only able to grow The North Dallas Moms Network's Instagram following to 40,000 because she was given an account to manage that already had approximately 10,000 followers and she was connected to the highly reputable and trusted TLMN network. Lamont utilized the good will of TLMN to increase followers, as she was required to do by the SSR Agreement—these followers were not following Lamont and do not belong to Lamont.

**Lamont's Actions, Unless Enjoined, Have and Will Continue to Cause Damages and Irreparable Injury to TLMN**

89.    Due to Lamont's actions, TLMN has suffered significant monetary damages.  But, unless enjoined, Lamont's blatant theft of TLMN's intellectual property and her continued use of that property will cause irreparable injury to TLMN—indeed, her actions threaten to completely destroy the business of TLMN.

90.    TLMN has been unable to engage with the North Dallas Area Moms.  These moms no longer have access to updated TLMN content, and on information and belief, may currently be under the impression that Lamont, not TLMN, owns the Instagram Account, causing confusion as to who is responsible for and standing behind the new content being posted, and whether TLMN is even still active in the North Dallas Area.

91.     Lamont has stolen TLMN's property, is currently trading on its goodwill, and is now competing in the same Territory by maintaining the Instagram Account as her own account, in violation of the SSR Agreement's Restrictive Covenants (Sections 12. (a) and 15), wherein Lamont agreed not to compete with TLMN for a period of twelve months, said agreement surviving the termination of the SSR Agreement. Ex. 1, pp. 10, 12.

92.     As of the time of filing, Lamont is and remains in breach of her Restrictive Covenants as she has made several separate Instagram posts, using the Instagram Account, sharing local mom content in direct competition with TLMN.

93.     Lamont's refusal to make required posts in accordance with the state and national partnerships resulted in the loss of tens of thousands of dollars in fees, as well as the loss of the recurring partnerships.  Even for the partnerships that continue to work with TLMN, significant effort was made to salvage these relationships.

94.     The damage incurred also flows to TLMN's reputation and goodwill, which is now in question by TLMN's advertising partners and the North Dallas Area Moms that TLMN services but cannot reach as long as Lamont controls the Instagram Account.

95.     In addition to these losses, TLMN's other SSRs have been injured by their inability to recoup commissions from the partnerships Lamont violated. TLMN is a team effort; it is a network of moms coming together to help other moms.  Lamont completely ignored the TLMN mission.

96.     In fact, in an effort to protect TLMN's copyright and trademark rights, and to prevent further confusion, TLMN had to remove Lamont's biography from the Website and disengage any links from the Website to the Instagram Account until the Instagram Account is

returned to TLMN. This comes at a price to TLMN's customers, the North Dallas Area moms who are without the TLMN resources they have come to rely upon for the past four plus years.

97.     Most importantly, if Lamont were allowed to keep TLMN's intellectual property and operate with all of TLMN's content, know how, Instagram Account, local partners and advertisers and cater to local moms that came to TLMN's marketplace—not Lamont's—nothing would stop any of TLMN's 146 other independent contractors from breaching each of their SSR Agreements and walking away with the business that Lisiewski created.

98.     The loss of the business is the quintessential irreparable injury—as the damage is incalculable—and injunctive relief to stop this blatant breach is a necessary remedy.

99.     To date, despite numerous demands, Lamont has not reconnected the North Dallas Area Instagram Account to Sprout, she has not returned the login information for this account to TLMN, and she holds herself out as the owner of the North Dallas Area Instagram Account, in direct competition with TLMN, and causing confusion for TLMN's consumers and both reputational and monetary damage to TLMN.

## FIRST CAUSE OF ACTION
### (CYBERSQUATTING 15 U.S.C. § 1125(d))

100.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

101.    As alleged above, TLMN holds a registered trademark in the tradename "The Local Moms Network" with Registration No. 6044260 (July 7, 2020), and in the company logo, "Giving Moms the Gift of Time The Local Moms Network thelocalmomsnetwork.com" with Registration No. 6093787 (April 28, 2020) as depicted in ¶ 21 above.

102.    TLMN currently contracts with 146 local parents that curate content and events for 107 communities across 30 states. Each local community utilizes the unregistered derivative of

"The Local Moms Network" registered tradename, changing "The Local" to the name of their respective community. Each local website and social media account is also uniformly branded as [territory]moms.com and the tradenames [territory]momsnetwork or the [territory]moms.

103.    A slightly modified, unregistered derivative version of the logo pictured in ¶ 21, modified by TLMN, is included on the local sites and social media accounts run by each of the SSRs.  The name of the territory is inserted where the logo currently says "Giving Moms the Gift of Time", and then that trademarked slogan replaces the website at the bottom of the mark. The North Dallas Moms Network logo is shown in ¶ 22 above.

104.    Based on TLMN's extensive sales, marketing and advertising of TLMN's trademarks, tradenames and unregistered derivatives thereof, and through the expansion of TLMN's network from a single locale to 107 communities across 30 states, they have become distinctive and famous pursuant to 15 U.S.C. § 1125(c) and/or have acquired a secondary meaning.

105.    TLMN is the owner of the domain name northdallasmoms.com and has been the continuous owner of that domain name since January 18, 2023.

106.    TLMN has also been the owner of the Instagram Account since October 2019, previously under the username @friscoareamomsnetwork, and then under the username @northdallasmomsnetwork, beginning on or about January 18, 2023.

107.    The Instagram Account domain address is: https://www.instagram.com/northdallasmomsnetwork/.

108.    Since December 24, 2023, when she changed the passwords and removed TLMN's Instagram Account from Sprout, Lamont has had exclusive access to the Instagram Account and has been utilizing TLMN's domain name, derivative tradename and trademarks with the bad-faith intent to profit from their use.

109.    On information and belief, Lamont knows and has always known of TLMN's trademark rights to the above marks and tradenames through her training and her contractual obligations to TLMN.

110.    Lamont previously had prior access to and use of the Instagram Account in order to offer goods and services on behalf of, and to promote TLMN and the North Dallas Moms Network.

111.    Through the linktr.ee/northdallasmoms link found in the Instagram Account bio, any visitor can click through to a list of links and access each of the websites that are linked therein.

112.    At the top of the webpage reached by clicking on the linktr.ee/northdallasmoms link is the derivative version of the registered logo as shown in ¶ 21, modified for the North Dallas Moms Network.

113.    One of the links below this mark is a link to Lamont's Amazon storefront, where Lamont is selling goods under the name (and TLMN's derivative tradename) "North Dallas Moms // Rachael Lamont", and it indicates that Lamont earns commissions from all sales made through her storefront.

114.    The Instagram icon on the Amazon storefront webpage links back to the North Dallas Moms Network Instagram Account.

115.    Several other links on the linktr.ee page link to the website, northdallasmoms.com, which contains TLMN's logo at the bottom of the page and the North Dallas modified derivative logo at the top. The website also states, "A Proud Member of the Local Moms Network. Dedicated to Giving Moms the Gift of Time", TLMN's trademarked slogan. It also contains links to the Local Moms Network website.

116.     Through these links reachable from the Instagram Account, Lamont is using TLMN's registered trademarks, tradenames, and derivatives thereof to intentionally divert followers and consumers from TLMN and to profit from TLMN's name, image and business reputation.

117.     On information and belief, said use is causing and will continue to cause confusion for TLMN's followers and consumers who will assume that Lamont's Amazon storefront is connected to the North Dallas Moms Network and TLMN, when it is absolutely not.

118.     On information and belief, said use is causing and will continue to cause confusion for TLMN's followers and consumers who will assume that Lamont is still a representative of TLMN, which she is absolutely not.

119.     On information and belief, Lamont's bad-faith use of TLMN's domain name and unregistered derivatives of TLMN's registered marks and tradename is causing and continues to cause damage to TLMN in an amount to be determined at trial, but no less than $75,000.

120.     Further, if Lamont is not enjoined from using TLMN's domain name and unregistered derivative marks and required to return exclusive access to the Instagram Account to TLMN, Lamont will continue to use the Instagram Account and hold it out as her own to TLMN's detriment. As such, injunctive relief is necessary and appropriate.

121.     On information and belief, Lamont's infringement of TLMN's trademarks and tradename was willful, deliberate, fraudulent and malicious. Based thereupon and pursuant to 15 U.S.C. § 1117, TLMN is entitled to recover attorneys' fees and treble damages.

## SECOND CAUSE OF ACTION
### (FEDERAL TRADEMARK DILUTION 15 U.S.C. § 1125(c))

122.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 121 above as though fully set forth herein.

123.    As alleged fully above, TLMN has been continuously used its registered trademarks and unregistered derivatives thereof in connection with and to identify its products and services and to distinguish said products and services from similar products and services offered by other competitors of TLMN, by prominently using and displaying said marks on its products and services since at least April 2017 and began modifying said marks for each local network later that same year to create a uniform brand across TLMN's entire network.

124.    Based on TLMN's extensive sales, marketing and advertising of TLMN's trademarks and unregistered derivatives thereof, and through the expansion of TLMN's network from a single locale to 107 communities across 30 states, they have become distinctive and famous pursuant to 15 U.S.C. § 1125(c), and/or have acquired secondary meaning.

125.    Lamont's use of TLMN's registered trademarks and unregistered derivatives in connection with her promotion of goods and services for her own profit constitutes Lamont's commercial use in commerce of TLMN's registered trademarks and unregistered derivatives thereof.

126.    On information and belief, Lamont's confusingly similar use of registered trademarks and unregistered derivatives in connection with her unauthorized use of the Instagram Account since December 24, 2023, as well as Lamont's efforts to pass off her endorsement of third parties' goods and/or services as being part of, marketed, sponsored, licensed or otherwise approved by TLMN, when they are not, are eroding the distinctiveness of TLMN's registered trademarks and unregistered derivatives thereof.

127.    On information and belief, Lamont's continued confusingly similar use of the Instagram Account as alleged above, is likely to harm the reputation associated with TLMN's registered trademarks and unregistered derivatives thereof.

128.     Lamont's use of the Instagram Account as alleged above began after TLMN's registered trademarks and unregistered derivatives became famous, distinctive and/or acquired secondary meaning.

129.     On information and belief, Lamont's actions have caused a likelihood of dilution by lessening the capacity of said marks to identify and distinguish TLMN's products and services from those of its competitors, as well as by harming or threatening to harm the reputation of TLMN.

130.     On information and belief, Lamont's continued dilution threatens to cause, is causing, and will continue to cause injury to TLMN's name, image and business reputation.

131.     On information and belief, Lamont has willfully intended to trade on TLMN's reputation and/or to cause dilution to TLMN's registered trademarks, tradename and unregistered derivatives thereof.

132.     TLMN has no adequate remedy at law.

133.     On information and belief, Lamont's conduct has caused, and unless enjoined, will continue to cause irreparable harm and damage to TLMN's federal and common-law trademark rights, and TLMN's business, reputation and goodwill.

134.     On information and belief, Lamont's infringement of TLMN's trademarks and tradename was willful, deliberate, fraudulent and malicious. Based thereupon and pursuant to 15 U.S.C. § 1117, TLMN is entitled to recover attorneys' fees and treble damages.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

135.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 134 above as though fully set forth herein.

136.    The SSR Agreement is a valid and enforceable agreement between TLMN and Lamont.

137.    Since the SSR Agreement was entered into, TLMN has performed all its contractual obligations thereunder.

138.    As alleged above, Defendant has breached the SSR Agreement on numerous occasions, the first time in May 2023, and continuing during which time, Lamont failed and/or refused to upload certain posts on behalf of advertising partners of TLMN's that had paid for such posts to appear on the Instagram Account, and removed others, until on December 23, 2023, Lamont removed the Instagram Account from Sprout, changed the password to the Instagram Account and locked TLMN out, changed the logo on the Instagram Account to her own photo, and began using the Instagram Account as her own and in direct competition with TLMN.

139.    The actions alleged above were each direct violations of Sections 2, 10, 11 and 12 of the SSR Agreement, as fully set forth above and in Exhibit 1, attached hereto.

140.    Lamont's breaches have caused economic loss, the loss of potential business relationships, damage to TLMN's name and reputation, and deprived TLMN of its access to the Instagram Account by which TLMN had established a strong presence in the North Dallas community, and in which TLMN spent considerable time and effort to develop years before Lamont had any role in running the Instagram Account, depriving TLMN of a valuable marketing tool.

141.    Lamont's breaches have damaged TLMN in an amount to be determined at trial, but no less than $75,000, plus interest.

142.    Pursuant to Section 12(c), Lamont has agreed that any such breaches of Sections 10, 11 and 12 of the SSR Agreement would cause irreparable injury and that TLMN is therefore

entitled to preliminary and permanent injunctive relief as a result of said breaches. Lamont has been and continues to compete with TLMN in direct violation of Section 12 of the SSR Agreement and unless enjoined, TLMN will continue to be irreparably damaged by said competition.

**FOURTH CAUSE OF ACTION**
**(CONVERSION)**

143.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 142 above as though fully set forth herein.

144.    The Instagram Account has been TLMN's property since it first created the account in October 2019, first under the username @friscoareamomsnetwork, and then under the username @northdallasmomsnetwork, beginning on or about January 18, 2023.

145.    On December 24, 2023, Lamont removed the Instagram Account from Sprout, changed the password and locked TLMN out, usurping total control over the Instagram Account. On several occasions since she took these actions on December 23, 2023, Lamont has been asked to and has refused to provide TLMN with the password and return control of the Instagram Account to TLMN.

146.    The Instagram Account and its approximately 40,000 followers is an invaluable marketing tool for TLMN, one which TLMN spent time, expense and effort building. It is a necessary tool in TLMN's ability to reach the North Dallas moms who have come to rely on it and to raise revenue by utilizing the Instagram Account to advertise on behalf of TLMN's national partners. Each day that Lamont retains control and competes with TLMN, TLMN is being damaged by the loss of the Instagram Account.

147.    As a result of Lamont's refusal to provide access credentials to the Instagram Account, converting said account for her own personal use, and continuing to use it as her own,

TLMN is entitled to damages in an amount to be determined at trial, but no less than $75,000, plus interest, and the return of control of the Instagram Account.

**FIFTH CAUSE OF ACTION**
**(TRESPASS TO CHATTEL)**

148.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 147 above as though fully set forth herein.

149.    Lamont's intentional actions, as stated above, have caused harm and continue to cause harm to TLMN's interest in the Instagram Account, which Lamont is using for her own personal use and benefit.

150.    Lamont's intentional actions, as stated above, have adversely affected the condition, quality and value of the Instagram Account and deprived TLMN of its use since December 23, 2023.

151.    By intentionally depriving TLMN of the use of its property, Lamont has damaged TLMN and TLMN is entitled to an amount to be determined at trial, but no less than $75,000, plus interest, and the return of control of the Instagram Account.

WHEREFORE, Plaintiff, The Local Moms Network respectfully prays for the following relief:

a)   Monetary damages in an amount to be determined at trial, but no less than $75,000;

b)   Statutory treble damages and attorneys' fees under § 1117 of the Lanham Act;

c)   Pre-judgment interest;

d)   A permanent injunction (i) enjoining the defendant from associating herself with the TLMN brand; (ii) competing with plaintiff in violation of the restrictive covenants contained in Sections 2, 10, 11 and 12 of the Secondary Territorial Sales Representation Agreement ("SSR Agreement") for twelve (12) months to run from January 26, 2024;

and (iii) ordering defendant to return the @northdallasmomsnetwork Instagram account, along with the login information for the account, to TLMN; and

e)   Such other and further relief as this Court deems just and proper.

Dated: February 9, 2024
       Fairfield, Connecticut

LAZARE POTTER GIACOVAS
   & MOYLE LLP

By: ___s/ Michael Conway_____
    Robert A. Giacovas (*pro hac vice* to be filed)
    Lainie E. Cohen (*pro hac vice* to be filed)
    Michael Conway
    Christina Dellaporte (*pro hac vice* to be filed)
747 Third Avenue, 16th Floor
New York, NY 10017
(212) 758-9300
(212) 888-3295 (fax)
rgiacovas@lpgmlaw.com
lcohen@lpgmlaw.com
mconway@lpgmlaw.com
cdellaporte@lpgmlaw.com

*Attorneys for Plaintiff*
*The Local Moms Network, LLC*