UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOCAL MOMS NETWORK, LLC,<br>      Plaintiff,<br><br>      v.<br><br>RACHAEL LAMONT,<br>      Defendant. | No. 3:24-cv-192 (SRU) |

**TEMPORARY RESTRAINING ORDER**

Movant-Plaintiff Local Moms Network, LLC ("Local Moms") has twice moved for a temporary restraining order against its former independent contractor, Rachael Lamont. TROs, Docs. No. 3, 15.

For the reasons set forth below, Local Moms's motions for a temporary restraining order and a preliminary injunction, **docs. no. 3, 15**, are **granted** to the extent that Local Moms seeks a temporary restraining order.

**I.     Background**

Local Moms is a web-based business whose targeted consumer base is parents across the country. Compl., Doc. No. 1 ¶¶ 9, 13. Local Moms provides digital content, monetized by advertisements, and partners with local and national brands to present its target audience with "hyper-local . . . resources, services, and products." *Id.* ¶¶ 12-13. One of Local Moms's targeted "territories" is Frisco, Texas. *Id.* ¶ 25. Local Moms hires independent contractors, "Secondary Territorial Sales Representatives ('SSR')," who are local parents in its targeted territories. *Id.* ¶ 14. When Local Moms hires a new SSR, it provides training and "a shared drive containing . . . a library of pre-developed content that is available to share." *Id.* ¶ 17.

Rachael Lamont was a Local Moms SSR who worked in the Frisco Area Moms Territory, which eventually rebranded as the North Dallas Area Territory. *Id.* ¶¶ 25, 33, 36-37. Local Moms gave Lamont the login information for the North Dallas Instagram and Facebook accounts. *Id.* ¶ 38. When Lamont acquired the Instagram login information, the account had about 10,000 followers. *Id.* Lamont signed a Secondary Territorial Sales Representation Agreement, or "SSR Agreement," with Local Moms on September 22, 2020. *Id.* ¶ 25. The SSR Agreement contains "Restrictive Covenants," including an "Agreement Not To Compete or Solicit . . . for a period of twelve (12) months following the . . . termination thereof" not to "compete[] . . . in the Territory, or in . . . Texas[.]" SSR Agreement ¶ 12, Doc. No. 1-1 at 11. "The SSR further acknowledges that, were it to breach any of the covenants . . . the damage to the Company would be irreparable. . . . [T]he Company, . . . shall be entitled to preliminary and permanent injunctive relief against any breach . . . of any of said covenants[.]" *Id.* at 12.

Lamont allegedly "began to ignore her obligations" as an independent contractor and "decided that she was going to run the Instagram Account her own way, without any direction from" Local Moms. Doc. No. 1 ¶ 39. Local Moms alleges Lamont stole the Instagram account. *Id.* ¶¶ 76-78, 91. After several back-and-forth communications between Local Moms and Lamont's counsel, Lamont's employment agreement with Local Moms was terminated. *Id.* ¶¶ 80-84. Lamont, however, retained the Instagram account. *Id.* ¶ 99.

On February 9, 2024, Local Moms filed a complaint against Lamont alleging claims of Cybersquatting in violation of 15 U.S.C. § 1125(d); Federal Trademark Dilution in violation of 15 U.S.C. § 1125(c); Breach of Contract; Conversion; and Trespass to Chattel. *Id.* ¶¶ 100-151. That same day, Local Moms moved for a temporary restraining order and a preliminary

injunction. Doc. No. 3.[1] I held a telephonic hearing regarding the temporary restraining order on February 14, 2024. Min. Entry, Doc. No. 26. Ms. Lamont and her counsel, Attorney Rehns, were present on the call.

During the telephonic hearing, both parties agreed to engage in settlement discussions after the hearing. I encouraged Lamont to give Local Moms control of the Instagram account in a show of good faith. Counsel for Local Moms confirmed in e-mail correspondence on February 14 that Lamont returned the Instagram login and password to Local Moms. Counsel for Local Moms additionally emailed that "[t]he parties [] also agreed to cooperate on drafting and entering into a voluntary TRO that will expire in 14 days . . . should settlement fall through."

On February 21, 2024, Local Moms filed a notice that it was unable to resolve its dispute with Lamont. Doc. No. 31 at 2. Local Moms discovered "that Ms. Lamont had started her own Instagram account, Facebook account and Tik Tok account[.]" *Id.* at 1. Local Moms alleges Lamont's social media accounts are "all in direct competition with TLMN in the restricted area" of the non-compete clause in the SSR Agreement. *Id.*

> Ms. Lamont is now competing with TLMN . . . with the same photo she used on the TLMN account, and is promoting her accounts as "sharing family fun, dining & travel in the Dallas Area", even using the same font as the TLMN Account on her posts. Indeed, Ms. Lamont's Instagram feed includes the *same* posts she deleted from the TLMN website claiming that they were "personal" content . . . . Ms. Lamont's Facebook post launch[ed] her new "brand", in which she unequivocally states her intent to compete: "*Follow along for the same incredible content you've come to love—.*"

Doc. No. 33 at 1-2 (emphasis added). Local Moms attached exhibits containing screenshots of Lamont's new social media accounts and posts. Doc. No. 33-1.

---

[1] Local Moms again moved for a temporary restraining order and a preliminary injunction on February 12, 2024. Doc. No. 15. I consolidate both motions for a temporary restraining order for the purposes of this order.

I held another telephonic hearing regarding the temporary restraining order on February 23, 2024. Min. Entry, Doc. No. 33. Counsel for Lamont informed me that Lamont had taken down the allegedly competing accounts.

## II. Standard of Review

Federal Rule of Civil Procedure 65(b) gives district courts the power to grant temporary restraining orders with or without notice to the adverse party. "[E]very restraining order must: [] state the reasons why it issued; [] state its terms specifically; and [] describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Temporary restraining orders bind "the parties; [] the parties' officers, agents, servants, employees, and attorneys; and [] other persons who are in active concert or participation with" the aforementioned persons if they "receive actual notice." Fed. R. Civ. P. 65(d)(2).

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases). "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).

## III. Discussion

As outlined above, a party seeking a temporary restraining order must show "irreparable harm in the absence of the injunction" and "either (a) a likelihood of success on the merits or (b)

4

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d at 192 (quoting *Merkos L'inyonei Chinuch*, 312 F.3d at 96). I discuss each factor in turn.

A. Irreparable Harm

"Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Lazor v. Univ. of Connecticut*, 560 F. Supp. 3d 674, 678 (D. Conn. 2021) (quoting *United States SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) (cleaned up).

After the February 14, 2024 telephonic hearing, and after Lamont returned the Instagram login to Local Moms, Lamont created new social media accounts. *See* Doc. No. 31-1. Lamont has continued to post on Instagram, TikTok, and Facebook "in direct competition" with Local Moms. *See id.* (new posts on TikTok, Instagram, and Facebook); Lisiewski Decl., Doc. No. 15-1 ¶ 56. Her Instagram posts reflect the same content she previously posted under the Local Moms's Instagram. *See* Doc. No. 31-1 at 5. Local Moms claims Lamont is using the same standardized font that is used by Local Moms's platforms nationwide. *Id.* at 1; *see id.* at 5.

Lamont's Facebook post suggests she is intentionally targeting and soliciting Local Moms's customer base. Lamont created a shareable image to "bid farewell to this account" and "invite you to join me on my brand new journey at @itsrachaelskye[.] Follow along for the same incredible content you've come to love[.]" *Id.* at 3-4. Lamont additionally posted an Instagram reel captioned, "when you pour your heart into building a brand from the ground up and lose it in less than 10 seconds . . . BUT starting over can be fun." *Id.* at 6. Her followers commented "What happened?!" and "No clue what happened, but here for this new page!" *Id.*

5

When Lamont signed the SSR Agreement, she agreed to not "solicit, divert, take away, or attempt to take away . . . any business or patronage of the Company or any of its affiliates, whether actual or potential, or . . . interfere with, . . . then existing or potential relationships of the Company."  SSR Agreement, Doc. No. 1-1 at 11.  Lamont intentionally solicited Local Moms's customers to join her new page "for the *same* incredible content" she posted on behalf of Local Moms.  *See* Doc. No. 31-1 at 3-4 (emphasis added).  Lamont may have *already* diverted some of Local Moms's business.  If Lamont draws followers to her page, and away from Local Moms's page, there is no guarantee the diverted follower will return to Local Moms.  The potential permanent loss of business, and "threatened [] loss of a business" from Lamont's competition in the North Dallas territory, constitutes irreparable harm.  *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

When a business is threatened with "the loss of a relatively unique product. . . . loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages," the business faces "irreparable harm justifying injunctive relief."  *Id.* (collecting cases) (cleaned up).  Lamont threatens Local Moms not only with potential financial losses, but also with loss of reputation, actual and potential customers, and brand dilution.  Lisiewski Dec., Doc. No. 15-1 ¶¶ 42, 55-56, 60.  Brand confusion, loss of goodwill, and reputation damage are quintessential injuries to which monetary relief would be inadequate.  *RMH Tech LLC v. PMC Indus., Inc.*, 352 F. Supp. 3d 164, 201 (D. Conn. 2018) ("irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction.") (cleaned up).

Finally, under the SSR Agreement's plain language, Lamont and Local Moms contractually agreed that breaching the noncompete restrictive covenant would constitute

irreparable injury.  "The SSR further acknowledges that, were [she] to breach any of the covenants . . . the damage to the Company would be irreparable. . . . the Company . . . shall be entitled to preliminary and permanent injunctive relief against any breach or threatened breach." SSR Agreement, Doc. No. 1-1 at 12.

I conclude Local Moms would face irreparable harm absent injunctive relief.

B. Merits of the Underlying Claims

As articulated below, Local Moms is likely to succeed on the merits of its breach of contract claim, count three of the complaint, based on Lamont's alleged breach of the SSR Agreement's noncompete restrictive covenant.  Compl., Doc. No. 1 ¶¶ 138-40.

1. *Breach of Contract*

"[W]here the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms."  *Lee v. BSB Greenwich Mortg. Ltd. Partnership*, 267 F.3d 172, 178 (2d Cir. 2001) (quoting *Barnard v. Barnard*, 214 Conn. 99, 110 (1990)).  The SSR Agreement contains an "Agreement Not To Compete or Solicit . . . for a period of twelve (12) months following the . . . termination thereof" and not to "compete[] . . . in the Territory, or in . . . Texas[.]"  Doc. No. 1-1 at 11.

Based on Local Moms's allegations, affidavits, and exhibits, I conclude that Lamont's actions fall within the scope of the SSR Agreement's non-compete/non-solicitation clause.  Even after Lamont returned the login information to Local Moms's Instagram account, and relinquished control of the account, Lamont continued to post content in the North Dallas/Frisco territory.  *See* Doc. No. 31-1 at 2-5, 7 (depicting Lamont's new social media accounts that purport to "shar[e] family fun, dining & travel in the Dallas Area").  Lamont's Facebook post suggests she is intentionally targeting, soliciting, and attempting to divert Local Moms's

7

customer base using the exact same content she uploaded to Local Moms's social media accounts.  *Supra* Section III.A.  Thus, if the SSR Agreement's noncompete clause is reasonable as a matter of law, Local Moms is likely to succeed on the merits of its breach of contract claim.

"There are five criteria by which the reasonableness of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests."  *DeLeo v. Equale & Cirone, LLP*, 202 Conn. App. 650, 672 (2021) (quoting *New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 533-34 (1989)).  "[A] finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable."  *Id.* (quoting *New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. At 534).  The SSR Agreement's noncompete restrictive covenant is reasonable and enforceable for the following reasons.

First, a twelve-month noncompete is a reasonable time restriction.  *See New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 538 (1989) (two-year noncompete upheld as "clearly reasonable").

Second, the restrictive covenant's geographic scope is reasonable because it is limited to the areas in which Local Moms does business.  "The general rule is that the application of a restrictive covenant will be confined to a geographical area which is reasonable in view of the particular situation."  *Scott v. Gen. Iron & Welding Co.*, 171 Conn. 132, 138 (1976).  Courts disfavor restrictive covenants that "protect[] the employer in areas in which he does not do business or is unlikely to do business."  *Id.*

Local Moms's business model is to equip parents with "hyper-local . . . resources, services, and products."  Compl., Doc. No. 1 ¶ 12.  The Restrictive Covenant bars Lamont from competing "in the Territory"—in Lamont's case, the North Dallas/Frisco area—"or in California, Connecticut, Colorado, Florida, Georgia, Illinois, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Wisconsin, or in any other geographic area where such business is being conducted."  SSR Agreement, Doc. No. 1-1 at 11.  I conclude that the noncompete's geographic scope is reasonable because it is narrowly tailored to territories where Local Moms currently provides "hyper-local . . . resources[.]"  Compl., Doc. No. 1 ¶ 12.

Fourth, Lamont's "ability to pursue h[er] occupation" is not unreasonably restricted by the covenant.  *See DeLeo v. Equale & Cirone, LLP*, 202 Conn. App. at 672.  Lamont represented to the Court during the February 14, 2024 telephonic hearing that she has full-time employment separate from her independent contractor work with Local Moms and separate from her presence on social media.

Finally, the restrictive covenant does not interfere with the public's interests.  Clear and unambiguous noncompete clauses are routinely enforced.  Local Moms's businesses operations are akin to many other businesses who hire independent contractors and operate on social media platforms.  Web-based businesses would be severely disrupted if independent contractors were allowed to take company resources, divert consumers, and dilute a company's brand and reputation, as Lamont has done.

The SSR Agreement is therefore reasonable.  I conclude Local Moms is likely to succeed on the merits of its breach of contract claim.

## IV.  Conclusion

For the foregoing reasons, Local Moms's motions for a temporary restraining order and a preliminary injunction, **docs no. 3, 15**, are **granted in part and denied without prejudice in part**.  The motions are granted to the extent Local Moms seeks a temporary restraining order and denied without prejudice as premature to the extent Local Moms seeks a preliminary injunction.

Accordingly, **it is ORDERED** that Lamont, her agents, servants, employees, and others working in concert with her who receive actual notice of this order, are temporarily restrained, **until March 8, 2023**, from:

(i)   using or posting to the @itsrachaelskye Facebook or Instagram account;

(ii)  competing with TLMN in accordance with the geographical constraints contained in Section 12(a) of the Secondary Territorial Sales Representation Agreement. For purposes of this TRO only, "compete" is defined as any online activity, including but not limited to creating and uploading posts, reels and/or other content to Instagram, which is for advertising, promotional, and/or any other commercial purposes and which is garnered towards providing moms and followers of the general public with hyper-local information about available resources and activities for commercial purposes;

(iii) soliciting, diverting, taking away or attempting to take away, accepting any business or potential business of TLMN, or encouraging any customer or client of TLMN to terminate relations with TLMN; and

(iv)  using of the resources TLMN provided to her during training or throughout her tenure at TLMN, including but not limited to the training materials, sales support information, guides, playbooks, pre-developed content, the handbook, and ad-sales

packages (the "Resources").  Lamont shall return the Resources to TLMN promptly or alternatively, destroy the Resources, prior to the expiration of this TRO.

This TRO shall issue without a bond.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of February 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge